# IN UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Robert Charles Smith, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:15-cv-94 |
| | ) | |
| Hartman Walsh Painting Company, | ) | **REPORT AND RECOMMENDATION** |
| Basic Electric Power Cooperative, and | ) | **ON MOTION FOR** |
| Sargent & Lundy, LLC, | ) | **INJUNCTIVE RELIEF** |
| | ) | **AND MOTION TO STRIKE** |
| Defendants. | ) | |

A motion filed by defendant Hartman Walsh Industrial Services (Hartman) seeks a preliminary injunction prohibiting the plaintiffs' spouse from engaging in the unauthorized practice of law. The motion further requests that the plaintiff and his spouse be found in contempt of court and that the plaintiff be sanctioned. (Doc. #109, p. 7). Additionally, Hartman moves to strike the plaintiff's response to the motion because it was not timely filed. (Doc. #125).

## Summary

This court recommends that the motions be denied.

## Facts

The plaintiff Robert Charles Smith (Smith) alleges that he was injured when he was exposed to methyl ethyl ketone (MEK) while on a work assignment inside a slurry tank at the Leland Olds Station in Stanton, North Dakota. Smith is not represented by counsel. Hartman alleges that Smith's wife, Terri J. Smith, has "been engaged in the prosecution of this case since its inception." (Doc. #109, p. 1).

Specifically, Hartman contends that Terri J. Smith has performed research tasks, drafted pleadings, communicated with opposing parties, participated in discovery, and

acted as her husband's representative in this litigation. In her deposition, Terri J. Smith describes her role in preparation of the lawsuit:

> Q. What is your role?
>
> A. I put together the paperwork. I do the research and figure out what is the next step and what to do and how to do it and what forms to use.
>
> Q. So as an example, the complaint that was filed to start the lawsuit, did you draft that?
>
> A. Yes. I took bits and pieces from other—I couldn't even tell you where—of similar law cases that were similar to ours and pieced it altogether.
>
> Q. What about the discovery that has been sent out to the defendants? Did you draft that?
>
> A. Yes.
>
> Q. What about the answers to the discovery that we served upon Robert?
>
> A. No.
>
> Q. You didn't draft those responses?
>
> A. I typed it.
>
> Q. He gave you the substance to type it?
>
> A. Right.
>
> Q. In the complaint did you come up with the substance?
>
> A. For the most part, yes. I went in, and I just had to find examples and pieced it together. He went through, though—he still approved all of the documents and made sure that—like when it would talk about the OSHA violations and such, to make sure that those were correct and the correct ones.
>
> I told him, "I am not going to go digging and making sure that these are the correct ones. You need to make sure that these are correct." The actual incident part was all him. He would just tell me. And I would just type it.

(Doc. #109-1, p.5).

Smith filed two responses, docketed at #122 and #129. With the exception of some text missing at page 11 of #122, but inserted at page 10 of #129, the two responses appear to be substantively identical. Neither response was timely filed, and Hartman asks that the responses therefore be stricken and that the court summarily rule as allowed by Civil Local Rule 7.1(F). (Doc. #125).

In opposing the motion, Smith describes he and his wife having researched and educated themselves on the legal process, his wife having sent emails on his behalf, and his wife having edited documents concerning the lawsuit; he also attached certain exhibits to his responses, which are documents Smith describes his wife having "edited for grammar" and returned to him for his review. (Doc. #122, p. 10). Smith compares the tasks his wife has done with those done by defense counsel's non-lawyer staff. E.g, id. at 9. Additionally, Smith cites to he and his wife being "bound with a marriage contract with each other . . . for over ten years" and "mutually work[ing] together and support[ing] each other side by side in all aspects of their life together." Id. at 6.

**Law and Discussion**

In considering a motion for a preliminary injunction, a court is to employ a well-established four-factor inquiry, weighing (1) the threat of irreparable harm to the moving party absent an injunction; (2) the balance of harms; (3) the moving party's "fair chance of prevailing" on the merits; and (4) the public interest. See, e.g., Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981); Heartland Acad. Cmty. Church v. Waddle, 335 F.3d 684, 690 (8th Cir. 2003) (applying "fair chance of prevailing" standard, rather than "substantial likelihood of success" standard where something

other than government action based on presumptively reasoned democratic processes is challenged); North Dakota v. EPA, No. 3:15-cv-59, 2015 WL 5060744, at *3 (D.N.D. Aug. 27, 2015).

Hartman argues irreparable harm will result from being "burdened by Mrs. Smith's involvement in this case by spending unnecessary time and incurring unnecessary expenses defending against her unauthorized representation of Plaintiff." (Doc. #109, p. 5). As to Dataphase's balance of harms factor, Hartman contends that Terri J. Smith's "participation in this action also threatens the public by setting an unlawful and dangerous precedent for unlicensed and unqualified individuals to act on behalf of and perform legal work for parties to litigation." Id. at 6. Hartman argues that it meets the likelihood of success factor because the tasks Terri J. Smith has performed have been found to be unauthorized practice of law by the North Dakota courts. Finally, Hartman argues that "Mrs. Smith's ongoing unqualified and unauthorized involvement in this case directly contradicts the relevant public interest in this matter." Id.

That which constitutes the "practice of law" is not precisely defined. But, some of the activities that Terri J. Smith described in her deposition have been found—if performed by one not licensed to practice law in this state—to violate North Dakota's prohibition on unauthorized practice of law. For example, in State v. Niska, the North Dakota Supreme Court found that drafting pleadings constituted the unauthorized practice of law. 380 N.W.2d 646, 648 (N.D. 1986). Other tasks that Terri J. Smith described—for example, typing documents at her husband's request or transmitting emails on his behalf—do not constitute the practice of law. As the North Dakota Supreme Court has described, confining the practice of law to licensed attorneys "is not

4

intended to reserve to attorneys activities that may safely be conducted by laypersons." Zink v. Enzminger Steel, LLC, 798 N.W.2d 863, 869 (N.D. 2011).

Were Terri J. Smith a properly noticed party to an action seeking injunctive relief against her, Hartman would have a "fair chance of prevailing" by showing that she had engaged in the unauthorized practice of law. But, she is not a party to this action.

Nor has Hartman shown the threat of irreparable harm required under Dataphase. Hartman suggests, without evidentiary support, that Terri J. Smith's involvement in her husband's case has caused Hartman to spend additional time defending the case. But, there is no proof that Hartman would have been required to spend less time on the case in the absence of her involvement. As to the balance of harm and public interest factors, there is no suggestion of threat to the public at large because of Terri J. Smith having assisted her husband in this lawsuit. For these reasons, this court recommends against issuing a preliminary injunction.

In addition to its request for a preliminary injunction against Terri J. Smith, Hartman asks that both Terri J. Smith and her husband be held in contempt of court and that the court order sanctions against the plaintiff. Hartman's brief, however, does not address standards for a contempt of court finding, and this court recommends against that finding.

During a September 23, 2016 status conference, this court advised Robert Charles Smith that he could not ask his wife to communicate with defense counsel on his behalf, but that typing documents, for example, for him would be permissible. Smith agreed to comply with those directions. This court recommends that, rather than imposing any sanctions at this time, Robert Charles Smith be advised of the scope of

assistance he may request from his wife. Specifically, he should be advised that she may assist with clerical tasks, including transmission of email messages to defense counsel (a task akin to putting a stamp on a paper letter and placing it in the U.S. mail) and typing documents at his direction. But, she may not compose legal documents, give legal advice, or act as her husband's representative.

As to Hartman's motion to strike, there is no question that Smith did not timely respond to the motion for injunctive relief. This court has considered Smith's responses despite their untimeliness, though they had little influence on the recommendation. This court recommends that the district judge likewise consider the responses and that the motion to strike be denied.

## Recommendation

Hartman has not met the standards for the injunctive relief it seeks. Nor has Hartman demonstrated that a finding of contempt of court is warranted or that sanctions are warranted at this time. Hartman's motion for injunctive relief, (Doc. #108), should therefore be **DENIED**. Hartman's motion to strike, (Doc. #125), should also be **DENIED**.

Dated this 4th day of October, 2016.

*/s/ Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge

**NOTICE OF RIGHT TO OBJECT**

Pursuant to Federal Rule of Civil Procedure Rule 72(a) and (b) and District of North Dakota Civil Local Rule 72.1(D)(2) and (3), any party may object to this Report

and Recommendation by filing with the Clerk of Court no later than **October 18, 2016**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.