# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Robert Charles Smith, | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) Case No. 1:15-cv-94 |
| Hartman Walsh Painting Company, Basin Electric Power Cooperative, and Sargent & Lundy, LLC, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendants, | ) **ON MOTION FOR** |
| and | ) **SUMMARY JUDGMENT** |
| Hartman Walsh Painting Company, | ) |
| Defendant/Third-Party Plaintiff, | ) |
| vs. | ) |
| Duromar, Inc., | ) |
| Third-Party Defendant. | ) |

Robert Charles Smith, proceeding pro se and in forma pauperis, brought this personal injury action in connection with his July 15, 2009 exposure to methyl ethyl ketone (MEK)[1] while working inside an industrial tank. An earlier order dismissed Smith's claims against Hartman Walsh Painting Company, Basin Electric Power Cooperative, and Sargent & Lundy, LLC. (Doc. #176). The earlier order found Basin's motion for summary judgment on its crossclaim against Hartman Walsh moot, but on reconsideration the district judge gave Basin an opportunity to renew that motion. (Doc. #179). Basin renewed its motion, and this Report and Recommendation addresses Basin's renewed motion.

---

[1] MEK is a solvent that is often used in surface coatings.

## Summary of Recommendation

The plain language of the contract requires Hartman Walsh to indemnify Basin for defense costs without satisfaction of any conditions precedent. But, the contract does not explicitly require indemnification for fees and expenses incurred to establish Hartman Walsh's obligation to indemnify. Thus, Basin's motion for summary judgment on its crossclaim against Hartman Walsh should be granted, but Basin's recovery should not include fees and expenses incurred in establishing an obligation to indemnify.

## Facts

The relevant facts were summarized in an earlier Amended Report and Recommendation:[2]

> The incident giving rise to this action occurred at the Leland Olds Station (Leland Olds), a coal-fired generating plant near Stanton, North Dakota. Basin owns Leland Olds. Between 2007 and 2011, Basin engaged in a large-scale retrofit project to reduce Leland Olds' sulfur dioxide emissions.
>
> Basin contracted with defendant Sargent Lundy to provide engineering, design, procurement, and construction management services for the retrofit project. The project included installation of large tanks—approximately 60 feet tall and 60 feet in diameter—outside the existing plant structure. Basin contracted with Hartman Walsh, a painting and coatings contractor, to install internal coatings on the tanks. Under the contract, Hartman Walsh was to install an industrial coating product manufactured by Duromar. Basin's contract with Hartman Walsh required that a Duromar technical field representative oversee some aspects of Hartman Walsh's work. Smith acted as that Duromar representative at the Leland Olds site.
>
> On the date of the incident, Smith arrived at Leland Olds to inspect Hartman Walsh's coating installation inside Tank 2. Tank 2 was located in a new construction area away from the plant itself. Smith had inspected Hartman Walsh's coating installation on another tank eight or nine months earlier, and so was familiar with the project site.

---

[2] The Amended Report and Recommendation replaced an earlier Report and Recommendation. (See Doc. #161, p. 1 n.1).

Smith had contacted Hartman Walsh's crew prior to arriving at Leland Olds that day, so he knew when the coating installation was to begin. Upon his arrival, Smith saw two Hartman Walsh employees, Andy Jenkins and Jeff Stone, near Tank 2 and recognized them from his prior inspection at Leland Olds. Approximately six Hartman Walsh employees were working inside Tank 2; two were "safety men" on the ground inside the tank and the others were working from elevated platforms using "access climbers" to elevate them to the tank ceiling to apply the Duromar coating. Three other Hartman Walsh employees—Jenkins, Stone, and a safety attendant—were working outside Tank 2.

Smith entered Tank 2 after the Hartman Walsh safety attendant confirmed that Smith was wearing the proper equipment to enter the tank (safety glasses, hard hat, steel tipped shoes, and a particulate respirator on his sleeve). Smith entered the tank through a manhole that was 24 to 36 inches in diameter.

Shortly after Smith entered Tank 2, the Hartman Walsh employees noted a malfunction of an access climber, which necessitated an interruption in application of the coating. The coating materials applied inside Tank 2 were being transferred from a Hartman Walsh trailer into Tank 2 via "hose bundles." In order to flow through the hoses, it was necessary to heat the coating materials to a specific temperature. Because of the access climber malfunction, the coating that was in the spray line had to be purged quickly so that it would not cool and solidify—and thus damage the application equipment—while the work was interrupted. To flush the spray line, Hartman Walsh employees used MEK. A Hartman Walsh employee working from the elevated platform inside Tank 2 discharged his spray applicator, resulting in Smith being exposed to MEK while standing on the floor of Tank 2.

Smith estimates that he was exposed to MEK for three to five minutes. He describes inhalation of the MEK causing him to panic, cough, and retch. Smith exited the tank through the manhole and told Jenkins and Stone that the tank was a toxic environment.

After exiting Tank 2, Smith climbed to the top of it and took various photographs. He also walked around Tank 2 and noticed an air mover and dehumidifier which were not being used to evacuate contaminated air from, or provide fresh air to, Tank 2. Smith testified that Jenkins told him that the air handling equipment was not used so that others working on the site would not have to smell the coating material.

Later in the day, Smith experienced dizziness and left the job site. He drove himself to Bismarck, but stopped along the way because he was sick

3

      and vomited. The next morning, he vomited blood and was taken by ambulance to a Bismarck hospital. At the hospital, physicians diagnosed Mallory Weiss syndrome—that is, a tear in the tissue connecting the esophagus to the stomach. Smith was hospitalized and discharged three days later. He returned to work four days after his discharge, with no work restrictions. Smith describes continuing symptoms, including mental health disorders, loss of quality of life, and symptoms stemming from damage to his esophagus. (Doc. #98, p. 8).

      Following the incident, there was a dispute about whether Smith was an independent contractor or a Duromar employee. In 2011, he settled a Minnesota workers compensation claim against Duromar and its carrier for $53,000. He separately settled with Duromar for any claims, other than workers compensation claims, arising from the incident for the sum of $2,000.

(Doc. #161, pp. 2-5).

      In adopting that Amended Report and Recommendation, the district judge concluded:

> The unambiguous evidence establishes that Basin and Sargent & Lundy are entitled to indemnification from Hartman Walsh; Hartman Walsh is entitled to indemnification from Duromar; and Duromar is entitled to indemnification from Smith. Because of his previous settlement agreements with Duromar, Smith would ultimately be responsible for satisfying any judgment he received from Basin, Sargent & Lundy, or Hartman Walsh.

(Doc. #176, p. 2). The district judge found all other issues and motions moot and concluded that a separate Report and Recommendation was also moot.[3] Id.

      In the instant motion, Basin requests summary judgment on its crossclaim against Hartman Walsh, seeking indemnification for the fees and expenses it incurred in defending this matter and the fees and expenses it incurred in seeking indemnification

---

[3] On December 12, 2016, this court entered a separate Report and Recommendation on Basin's motion for summary judgment on its crossclaim against Hartman Walsh. (Doc. #164). Hartman Walsh had failed to respond to Basin's summary judgment motion, but it filed an objection to the December 12th Report and Recommendation. (See Doc. #168).

4

from Hartman Walsh.

## Standard of Review

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing the basis for its motion. Donovan v. Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002). If the moving party demonstrates that no material facts are in dispute, the nonmoving party then bears the burden of setting forth facts showing a genuine issue for trial. Id. While the court must view all facts and inferences in the light most favorable to the nonmoving party, id., "[f]actual disputes that are irrelevant or unnecessary will not be counted," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate if no reasonable jury could return a verdict for the nonmoving party. Id.

## Law and Discussion

Indemnity contracts are subject to the same rules of interpretation as are other contracts. Specialized Contracting, Inc. v. St. Paul Fire & Marine Ins. Co., 825 N.W.2d 872, 877 (N.D. 2012).[4] "The parties' intent is to be ascertained from the writing alone if possible." Id. Words in an indemnity contract are given their plain, ordinary, and commonly understood meaning. Id. "[P]arties are bound by clear and unambiguous language evidencing an intent to extinguish liability." Reed v. Univ. of N.D., 589 N.W.2d

---

[4] North Dakota law governs this diversity action. See Paracelsus Healthcare Corp. v. Philips Med. Sys., Nederland, B.V., 384 F.3d 492, 495 (8th Cir. 2004) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

5

880, 886 (N.D. 1999).

Basin contends that the plain language of its contract with Hartman Walsh obligates Hartman Walsh to indemnify it for any losses related to Smith's claims.[5] But, Hartman Walsh argues that no obligation to indemnify arose because Basin (1) did not provide written notice as required by the contract and (2) did not formally tender its defense. Further, Hartman Walsh contends that Basin is not entitled to recover fees and expenses it incurred in seeking indemnification.

1.  **Plain Language of the Contract**

The contract, which Basin drafted, incorporates a document titled "General Conditions for Erected Materials and Equipment, and Labor Contracts" (hereinafter "General Conditions"). Paragraph 25.1 of the General Conditions provides that "[a]ll notices hereunder shall be in writing and either (a) delivered in person to an authorized employee of the party for whom it is intended or (b) sent by certified or registered mail to the business address of the party to be notified." (Doc. #182-2, p. 20). Hartman Walsh argues that Paragraph 25.1 required Basin to provide written notice of its indemnification claim. Basin disagrees, contending that Paragraph 25.1 provides the

---

[5] Basin also contends that Hartman Walsh should be judicially estopped from arguing a position contrary to that which it successfully argued earlier in the litigation—that a circuity of obligation exists. However, the court does not view Hartman Walsh as denying existence of a circuity of obligation in opposing this motion. (See Doc. #182, p. 7). The court therefore has not applied the doctrine of judicial estoppel. Hartman Walsh is not denying its obligation regarding any monetary damages that Smith might have been awarded. Rather, Hartman Walsh is contending that it is not required to reimburse Basin's defense costs, since Basin did not provide notice or tender its defense. Hartman Walsh's current argument is not contrary to the circuity of obligation argument it raised earlier in the litigation. Thus, the doctrine of judicial estoppel does not apply.

"method and form of notice," but applies only when notice is actually required by another provision of the contract. (Doc. #188, p. 6). Basin acknowledges that several provisions of the contract and General Conditions require notice but argues the indemnification clause does not include that requirement. (See e.g., Doc. #182-1, pp. 13, 18; Doc. #182-2, pp. 9, 12, 16, 18) (various provisions requiring notice). For example, Basin notes that a separate indemnification provision requires it to provide notice to Hartman Walsh regarding any claims for alleged patent infringement. (See Doc. #182-2, p. 20).

This court agrees with Basin's position. The plain language of Paragraph 25.1 does not govern when notice is required; it governs only how notice must be provided when required.[6] Additionally, the plain language of the indemnification provision does not require notice, while several other provisions—including a separate indemnification provision regarding patent claims—explicitly state that notice is required under those specific provisions. Inferring a notice requirement where there is none would be contrary to the plain language of the contract as a whole. See Specialized Contracting, Inc., 825 N.W.2d at 877 (citing N.D. Cent. Code § 9-07-6) (stating that courts are to

---

[6] Although Hartman Walsh contends that the contract is ambiguous, the plain language of the contract supports only one reasonable interpretation of the parties' intent regarding notice requirements. See Vanderhoof v. Gravel Prods., Inc., 404 N.W.2d 485, 491 (N.D. 1987) ("An ambiguity exists when rational arguments can be made in support of contrary positions as to the meaning of the term, phrase, or clause in question."); see also Doe 1 v. AOL LLC, 552 F3d 1077, 1081 (9th Cir. 2009) ("That the parties dispute a contract's meaning does not render the contract ambiguous; a contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation.") (citation and internal quotation marks omitted). Additionally, "[t]he determination of whether a contract is ambiguous is a question of law for the court." Vanderhoof, 404 N.W.2d at 491.

"consider the indemnity contract as a whole and give effect to every part"); see also Marksmen, Inc. v. Interbrand Corp., No. 10 Civ. 214, 2010 WL 2595103, at *3 (S.D.N.Y. June 28, 2010) ("Courts do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes was there.") (citation and internal quotation marks omitted). The district judge should conclude that the plain language of the contract did not require Basin to provide Hartman Walsh written notice under the indemnification provision.

## 2. Failure to Tender Defense

Hartman Walsh contends that, because Basin failed to tender its defense, Hartman Walsh should not be obligated to indemnify Basin. Hartman Walsh avers that Basin's failure to tender prejudiced Hartman Walsh because neither Hartman Walsh nor its insurer had any input regarding Basin's defense, thus requiring Hartman Walsh to pay defense costs for both it and Basin without having had an opportunity to minimize those costs. Lastly, Hartman Walsh contends that, because Basin failed to tender its defense, its insurer did not know whether "Basin was engaging in targeted tender and choosing to submit the claim to its own carrier or some other defendant's carrier." (Doc. #182, p. 5).

As Basin notes, the duty to defend and the duty to indemnify are distinct obligations. See Specialized Contracting, Inc., 825 N.W.2d at 880 (stating that "[t]he duty to defend and the duty to indemnify are separate"); see also Crawford v. Weather Shield Mfg. Inc., 187 P.3d 424, 432 (Cal. 2008) ("A duty to defend another . . . is thus different from a duty expressed simply as an obligation to pay another, after the fact, for defense costs the other has incurred in defending itself."). The contract provides that

8

Hartman Walsh had both a duty to defend and a duty to indemnify Basin, including indemnification for reasonable attorneys' fees if Basin chose to represent itself. The explicit language of the contract states that Hartman Walsh "shall <u>defend</u>, <u>indemnify</u>, and hold harmless [Basin] . . . from all claims, causes of action, losses, liabilities, and expenses (<u>including reasonable attorney's fees</u>)." (Doc. #17-2, pp. 2-3; Doc. #182-1, pp. 15-16) (emphasis added). Basin seeks to require Hartman Walsh to indemnify it for its defense costs and its costs of seeking indemnification but does not assert any breach of Hartman Walsh's duty to defend.[7] Therefore, cases addressing a duty to defend are not determinative.

Hartman Walsh argues that "[o]ther jurisdictions have held that a tender of defense is required to obligate indemnification." (Doc. #182, p. 2). Although some courts have concluded that an obligation to reimburse for defense costs arises only after an indemnitee tenders its defense to an indemnitor,[8] the general rule regarding indemnity contracts is that tender of defense is not a precondition to reimbursement of defense costs in the absence of a specific contractual requirement.[9]

---

[7] North Dakota law permits a party to conduct its own defense even if another party owes it a duty to defend. See N.D. Cent. Code § 22-02-7(4) ("The person indemnifying is bound, on the request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, <u>but the person indemnified has the right to conduct such defense if that person chooses to do so</u>.") (emphasis added).

[8] See <u>Iztep v. Target Corp.</u>, No. SA-06-CA-568-XR, 2010 WL 2278349, at *20 (W.D. Tex. June 4, 2010); <u>Hill v. Okay Constr. Co.</u>, 252 N.W.2d 107, 121 (Minn. 1977).

[9] See <u>Fontenot v. Mesa Petroleum Co.</u>, 791 F.2d 1207, 1221 (5th Cir. 1986) ("Where the indemnity agreement does not require notice, the courts will not infer a notice requirement as a condition precedent to a right to recover on the indemnity contract."); <u>Premier Corp. v. Econ. Research Analysts, Inc.</u>, 578 F.2d 551, 554 (4th Cir. 1978) (applying "the general rule that notice is unnecessary unless the contract of

Both Hartman Walsh and Basin recognize a lack of North Dakota case law on impact of failure to tender a defense, but both also recognize that North Dakota's statute governing interpretation of indemnity contracts is virtually identical to California's statute. Compare N.D. Cent. Code § 22-02-07, with Cal. Civ. Code § 2778. North Dakota Century Code section 22-02-07(3) states, "An indemnity against claims, demands, or liability, expressly or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good faith and in the exercise of reasonable discretion."[10] (Emphasis added). Section 22-02-07(4) provides that, unless a contrary intention appears, "[t]he person indemnifying is bound, on the request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the

---

indemnity requires it"); Lamensdorf v. Welin, No. 5:09-CV-424, 2011 WL 6151431, at *4 (M.D. Ga. Dec. 12, 2011) ("Based on the language of this indemnity provision, the Court concludes that . . . recovery of attorney's fees is not dependent upon or affected by timing of its tender."); Mass Engineered Design, Inc. v. Ergotron, Inc., No. 206 CV 272, 2008 WL 3484319, at *2 (E.D. Tex. Aug. 7, 2008) (concluding that "it is well settled law that the indemnitee is not required to give notice to the indemnitor unless expressly stated in the agreement"); Smithson v. Wolfe, No. C94-1015, 1999 WL 33656866, at *4 (N.D. Iowa July 19, 1999) ("[T]he general rule is that an indemnitee is not required to provide notice, let alone tender a defense, to the indemnitor under an indemnification contract, unless the contract itself requires notification or a tender of defense."); Ajax Paving Indus., Inc. v. Vanopdenbosch Constr. Co., 797 N.W.2d 704, 709-710 (Mich. Ct. App. 2010) (stating that tender of defense is not required for indemnification for fees and costs); see also Wallace v. Nat'l R.R. Passenger Corp., 5 F. Supp. 3d 452, 490 (S.D.N.Y. 2014) (holding that an indemnitee's decision to control its defense relieves the indemnitor's contractual duty to defend but it does not relieve the indemnitor's duty to reimburse the indemnitee for defense costs and attorneys' fees under a separate obligation to indemnify).

[10] California's corresponding statute states, "An indemnity against claims, or demands, or liability, expressly, or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good faith, and in the exercise of a reasonable discretion." Cal. Civ. Code § 2778(3).

right to conduct such defense if that person chooses to do so."[11] (Emphasis added).

Since North Dakota's statute is nearly identical to California's statute, it is appropriate to consider California case law. Hartman Walsh cites a California Supreme Court holding that "the duty to indemnify 'arises immediately upon a proper tender of defense by the indemnitee.'" (Doc. #182, p. 3) (quoting Crawford, 187 P.3d at 434). However, that statement refers only to an indemnitor's duty to defend under subdivision 4 of California's statute, not to its duty to indemnify under subdivision 3 of the statute or to its contractual duty to indemnify. See id.[12] (discussing the California Court of Appeal's holding in City of Watsonville v. Corrigan, 58 Cal. Rptr. 3d 458 (Cal. Ct. App. 2007)). The Crawford court explained:

> [B]y failing to request a defense, or to notify the indemnitor of the third party action, and by unilaterally deciding to conduct its own defense, the indemnitee does not necessarily forfeit its contractual right to reimbursement of its defense *costs* under the *indemnity* provisions of subdivision 3 of the statute.

Id. The court further explained that the duty to defend is "distinct and separate from the contractual obligation to pay an indemnitee's defense costs, after the fact, as part of any indemnity owed under the agreement." Id. (citing Cal. Civ. Code § 2778(3)); see also Corrigan, 58 Cal Rptr. at 463 ("Whether respondents were obligated to indemnify the City depends on the intent expressed in their contracts, supplemented by the

---

[11] California's corresponding statute states, "The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the right to conduct such defenses, if he chooses to do so." Cal. Civ. Code § 2778(4).

[12] In Crawford, the indemnitor did "not contend it was absolved of a duty to defend on account of any failure by [the indemnitee] to make such a request." 187 P.3d at 435 n.8.

11

interpretive rules set forth in section 2778, not on principles laid down in general insurance contracts.")[13]

In this case, the indemnity clause expressly provides that Hartman Walsh "shall defend, <u>indemnify</u>, and hold harmless [Basin] . . . from all claims, causes of action, losses, liabilities, and expenses (<u>including reasonable attorney's fees</u>)." (Doc. #17-2, pp. 2-3; Doc. #182-1, pp. 15-16) (emphasis added). Based on the plain language of the contract, in light of section 22-02-07(3), this court concludes that the parties intended that Hartman Walsh would indemnify Basin for its defense costs.

Hartman Walsh contends that Basin's failure to tender its defense prejudiced Hartman Walsh because neither it nor its insurer had any input regarding Basin's defense, nor any opportunity to minimize costs. But, Hartman Walsh expressly agreed to indemnify Basin for its defense costs separately from its agreement to defend Basin, and that agreement includes payment of defense costs for both it and Basin in circumstances such as this.[14] As stated in <u>Crawford</u>, "the parties have great freedom to allocate such responsibilities as they see fit," and "[w]hen the parties knowingly bargain for the protection at issue, the protection should be afforded." 187 P.3d at 430 (citations and internal quotation marks omitted).

---

[13] Basin contends that Hartman Walsh "erroneously relies on case law in the context of insurance indemnification," rather than on case law involving contractual indemnification in other contexts. (Doc. #188, p. 3).

[14] Basin contends that Hartman Walsh suffered no prejudice because it led the litigation. "'Express indemnity generally is not subject to equitable considerations . . . ; rather, it is enforced in accordance with the terms of the contracting parties' agreement.'" <u>Marksmen, Inc</u>, 2010 WL 2595103 at *3 (quoting <u>Prince v. Pac. Gas & Elec. Co.</u>, 202 P.3d 1115, 1120 (Cal. 2009)). Since equitable considerations do not apply, the court need not consider Hartman Walsh's arguments regarding prejudice.

Hartman Walsh contends that because Basin failed to tender its defense, its insurer did not know whether "Basin was engaging in targeted tender and choosing to submit the claim to its own carrier or some other defendant's carrier." (Doc. #182, p. 5). But, that is not relevant because, as discussed above, Hartman Walsh's duty to defend is separate and distinct from its duty to indemnify. The district judge should conclude, as a matter of law, that Basin was not required to tender its defense[15] prior to seeking reimbursement for its defense costs under the contract's indemnification provision and section 22-02-07(3).[16] Therefore, Basin's motion for summary judgment should be granted with regard to its request for attorneys' fees and costs in defending against Smith's claims.[17]

### 3.     Reimbursement of Fees and Costs in Seeking Indemnification

Basin also seeks its attorneys' fees and costs incurred in seeking indemnification. Hartman Walsh contends that, since the contract "only addresses personal injury claims and property damage," it is not required to indemnify Basin for those costs because they are unrelated to Smith's complaint. (Doc. #182, p. 6). Basin counters that the contract requires Hartman Walsh to indemnify it for <u>all</u> of its attorneys' fees, including those

---

[15] Basin argues that even if a tender of defense was required, its crossclaim seeking a defense and indemnification was sufficient to satisfy that requirement. The court need not address that argument since tender of defense is not required prior to an indemnitee seeking indemnification.

[16] The court emphasizes that, pursuant to the contract, Basin's defense costs must be "reasonable," and, pursuant to section 22-02-7(3), the costs must have been "incurred in good faith and in the exercise of reasonable discretion."

[17] Whether Smith is ultimately responsible to make reimbursement for Basin's defense costs is not determinative; Smith's ultimate obligation does not preclude Basin from enforcing the indemnity agreement against Hartman Walsh.

incurred in enforcing the indemnification clause. (Doc. #188, pp. 8-9).

"It is well established that an indemnitee may not recover attorney's fees and expenses incurred to establish the existence of an obligation to indemnify unless the agreement explicitly says otherwise." Barsness v. Gen. Diesel & Equip. Co., Inc., 422 N.W.2d 819, 827 (1988). Basin and Hartman Walsh's indemnity agreement states, in pertinent part:

> To the maximum extent permitted by law, [Hartman Walsh] shall defend, indemnify, and hold harmless [Basin] . . . from **all** claims, causes of action, losses, liabilities, and expenses (including reasonable attorney's fees) for personal loss, injury, or death to persons (including but not limited to [Hartman Walsh's] employees) and loss, damage to or destruction of [Basin's] property or the property of any other person or entity (including but not limited to [Hartman Walsh's] property) in any manner <u>arising out [of or] connected with the Contract</u>.

(Doc. #17-2, pp. 2-3; Doc. #182-1, pp. 15-16) (emphasis added).

In <u>Rupp v. American Crystal Sugar Co.</u>, the North Dakota Supreme Court held that an indemnitee <u>could not</u> recover attorneys' fees and expenses incurred in establishing a duty to indemnify under a similar indemnification provision:

> The [indemnitor] agrees to pay on behalf of and hold harmless [the indemnitee] . . . from **all** loss, costs, damage and/or expense arising out of any demand, claim, suit or judgment for damages or injuries to any person, firm or corporation whatsoever . . . or for the death of any person, or for injury or damage to property (including but not limited to adjoining and adjacent property, buildings, driveways, walks, yards) caused or alleged to have been caused by the [indemnitor] . . . <u>in connection with work performed by reason of this order</u>.

465 N.W.2d 614, 615-16 (N.D. 1991). The Basin/Hartman Walsh indemnity agreement, like the <u>Rupp</u> indemnity agreement, is part of a construction contract. See id. at 615. Basin identifies two phrases in its indemnity agreement with Hartman Walsh which are not in the <u>Rupp</u> provision—"[t]o the maximum extent permitted by law" and "in any

14

manner." But, those two phrases, standing alone or in conjunction with the other language of the indemnification provision, do not unambiguously and explicitly state that Hartman Walsh must indemnify Basin for expenses and attorneys' fees incurred in establishing a duty to indemnify.

Basin cites Hoge v. Burleigh County Water Management District, 311 N.W.2d 23 (N.D. 1981), in support of its position. That case involved litigation to recover damages to the plaintiffs' land. In Hoge, the North Dakota Supreme Court held that the plaintiff could recover attorneys' fees and expenses incurred to establish an existence of a duty to indemnify under the following indemnification provision:

> The party of the second part hereby agrees to indemnify and to hold and save the parties of the first part harmless from **any and all** damages to their lands not conveyed herein in fee arising from the use of the rights, easement and right-of-way herein granted, and agrees to pay any damages which may arise to the parties of the first part's property through the use, occupation and possession of the rights herein granted by the party of the second part.

311 N.W.2d at 25. The indemnification provision in Hoge is substantially similar to both the Basin/Hartman Walsh provision and the Rupp provision. But, in Hoge, the defendant—the Water Management District—had obtained part of the Hoges' land and an easement on another part of their land for a flood control project. Id. at 31. The deed from the Hoge's to the Water Management District included the indemnity clause. Id. at 25. The supreme court reasoned that the "essence of the indemnity agreement was protection to the Hoges from losses arising from the flood control project."[18] Id. at 31. The court held that "attorneys' fees were implied [and] [t]o hold otherwise would dilute

---

[18] In Hoge, the supreme court noted that "the Hoges had to commence [the] lawsuit, wait for it to be heard, and spend considerable money on attorneys' fees to pursue recovery of losses." 311 N.W.2d at 31.

15

[the Hoges'] recovery and be contrary to the spirit of the indemnity agreement which was designed to pay the Hoges for all losses they incurred." Id. at 31-32.

In Rupp, the supreme court distinguished Hoge, stating, "This is not a case like Hoge . . . , where indemnitees were allowed to recover attorney's fees because they were impliedly included in the indemnity agreement and to hold otherwise would dilute the indemnitees' recovery for damages to their property as a result of a flood control project." 465 N.W.2d at 619 n.5. The same distinction applies to the Basin/Hartman Walsh contract. Basin, like the indemnitee in Rupp, will not suffer any dilution of recovery for damages. Moreover, Rupp is a more recent decision than Hoge. Thus, the district judge should conclude that the supreme court's decision in Rupp, rather than Hoge, applies to the circumstances of this case.

Because the indemnity agreement does not explicitly state that Basin may recover attorneys' fees and expenses incurred to establish the existence of Hartman Walsh's obligation to indemnify, Basin is not entitled to recovery of those fees as a matter of law. Basin's motion for summary judgment should therefore be denied with regard to that claim.

## Conclusion

For the reasons discussed above, it is **RECOMMENDED** that Basin's motion for summary judgment on its crossclaim against Hartman Walsh, (Doc. #180), be **GRANTED** but that Basin's recovery be limited to its defense costs.

Dated this 30th day of June, 2017.

*/s/ Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge

## NOTICE OF RIGHT TO OBJECT[19]

Any party may object to this Report and Recommendation by filing with the Clerk of Court no later than **July 14, 2017**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.

---

[19] See Fed. R. Civ. P. 72(b); D.N.D. Civ. L.R. 72.1.