IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Robert Charles Smith,<br><br>    Plaintiff,<br><br>-vs-<br><br>Hartman Walsh Painting Company, Basic Electric Power Cooperative, and Sargent & Lundy, LLC,<br><br>    Defendants.<br><br>-and-<br><br>Harman Walsh Painting Company,<br><br>    Defendant/Third-Party Plaintiff<br><br>-vs-<br><br>Duromar, Inc.,<br><br>    Third-Party Defendant. | Case No. 1:15-cv-94<br><br>**ORDER REVERSING, IN PART, MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND GRANTING MOTION FOR RELIEF UNDER FED.R.CIV.P. 60(b)** |

On February 5, 2018, the court received a Report and Recommendation from Magistrate Judge Alice R. Senechal.[1] The report recommends that the plaintiff's Fed.R.Civ.P. 60(b) motion be denied because he failed to satisfy the rule's requirements. Plaintiff Robert Smith filed objections to the Report and Recommendation.[2]

Smith has asserted, in part, a right to relief under Rule 60(b)(6), which provides that relief may be granted from an order for "any other reason that justifies relief." The Eighth Circuit has noted that the rule is grounded in equity and exists "to prevent the judgment

---

[1] Doc. #203.

[2] Doc. #204.

1

from becoming a vehicle of injustice.³ An "important equitable consideration" is whether the litigants received a ruling on the merits of their claim.⁴ Prior to deciding whether this court should exercise its equitable powers, the undersigned directed the defendants and third-party defendant to file a response to the merits of the plaintiff's arguments regarding the applicability of the circuity of obligation/indemnity provisions. The court has carefully considered the briefs filed by the parties⁵ and now issues this order.

The defendants/third-party defendants (collectively "defendants") frame the issues as general lack of consent to the indemnity agreements, lack of intent of the parties, and whether there is ambiguity in the release agreement. The court sees the issue raised by Smith a bit differently. The release agreement provided:

> for the sole consideration of **Two-Thousand Dollars** ($2,000.00), . . . [plaintiff] does hereby release, and acquit and forever discharge **Duromar, Inc.**, its heirs, representatives, . . . from any and all actions, claims, damages, costs, loss of services, expenses, and compensation on account of, or in any way growing out of, any and all personal injuries, whether physical or mental, resulting from an alleged accident that occurred on or about the 15th day of July, 2009, at or near Stanton, North Dakota.
>
> \* \* \*
>
> It is further specifically agreed by the undersigned that by accepting this offer of settlement, that any and all claims save and except for the liabilities for workers' compensation benefits that are being settled pursuant to a separate agreement incorporated herein by reference,⁶ for the injuries that the undersigned may have against Duromar, Inc. are settled by this release. <u>It is understood that any potential claims the undersigned may have against any other tortfeasor are unaffected by the terms and agreements set forth herein</u>.

---

³ MIF Realty L.P. v. Rochester Ass'n, 92 F.3d 752, 755 (8th Cir. 1996).

⁴ Id.

⁵ Docs. #209, #210, & #213.

⁶ The workers compensation claim against Duromar was settled for $53,000.00.

2

* * *

> It is further expressly understood and agreed that the undersigned reserves himself and preserves the balance of the whole claims, demands and causes of action against any and all persons and parties other than Duromar, Inc., and that <u>he does not by this compromise settlement intend to release or discharge from liability any person or party or entity other than Duromar, Inc.</u>[7]

By the time Smith signed this release agreement, various indemnification agreements had been executed that Smith would have no reason to know about. Under these agreements, Basin and Sargent & Lundy were entitled to indemnification from Hartman Walsh; Hartman Walsh was entitled to indemnification from Duromar; and Duromar was entitled to indemnification from Smith. Thus, when Smith signed the release agreement he was responsible for satisfying any judgment he received from Basin, Sargent & Lundy, or Hartman Walsh. The statements in the release agreement– that any potential claims Smith might pursue against tortfeasors not named Duromar are "unaffected by the terms and agreements" and the agreement between Smith and Duromar does not "release or discharge from liability any person or party or entity other than Duromar"–misrepresented the reality of the situation. The indemnity agreements, for which Smith was not a party, made it a legal impossibility for Smith to recover from any other tortfeasor.

It was not until Smith commenced this action for damages against Hartman Walsh, Basin Electric, and Sargent & Lundy for the incident occurring on July 15, 2009, that he discovered the legal impossibility. After commencing this action, Smith was met with motions to dismiss and for summary judgment. The court previously concluded that

---

[7] Doc. #90-2 (emphasis added).

Smith's complaint was subject to dismissal because the circuity of obligation made him responsible for satisfying any judgment he obtained against the non-settling tortfeasors. It was after this finding that Smith brought a motion under Rule 60(b), asserting various legal reasons why the release agreement should not bar his claims against Basin, Sargent & Lundy, and Hartman Walsh.

The magistrate judge previously found that North Dakota law is applicable in this diversity action.[8] The court has reviewed North Dakota law focusing on the "important equitable consideration" of whether the parties received a ruling on the merits of their claim. "A valid contract requires parties capable of contracting, consent, a lawful object, and sufficient consideration. The parties' consent must be free, mutual, and communicated to each other."[9] If a party's free consent to a contract is obtained by fraud, the defrauded party may rescind the contract or affirm the contract and recover damages. Fraud under North Dakota law includes the following acts done with the intent to deceive another party or induce the other party to enter into the contract:

1. The suggestion as a fact of that which is not true by one who does not believe it to be true;
2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though that person believes it to be true;
3. The suppression of that which is true by one having knowledge or belief of the fact;
4. A promise made without any intention of performing it; or
5. Any other act fitted to deceive.[10]

---

[8] Doc. #161, n.4.

[9] Matter of Estate of Harris, 2017 ND 35, ¶ 8, 890 N.W.2d 561 (quoting Valentina Williston, LLC v. Gadeco, LLC, 2016 ND 84, ¶ 16, 878 N.W.2d 397)).

[10] N.D. Cent. Code § 9-03-08.

4

Lack of intent to deceive does not protect one who makes a false statement without a sufficient factual basis, as North Dakota also recognizes a statutory claim based on negligent misrepresentation under N.D. Cent. Code 9-03-08.[11]

The threshold issue in this litigation, one that has not been resolved, is whether the release agreement signed by Smith is a valid contract that precludes him from recovering against any other tortfeasor not named Duromar. The defendants believe this litigation should come to a quick end because the contract is plainly enforceable as there was no duty to disclose the existence of the indemnification agreements. What the defendants overlook is that the failure to disclose resulted in a contract that affirmatively retained Smith's right to assert claims against the non-settling tortfeasors, but effectively precluded Smith from recovering against any non-settling tortfeasor.

An unresolved legal issue in North Dakota is whether a party has a duty to disclose to the other party a fact within its knowledge that would have been material to the decision to enter into the contract for the specified consideration when the other party lacked the means of ascertaining that fact on his own.[12] Resolution of this issue impacts the merits of Smith's claim that the contract is unenforceable against the non-settling tortfeasors. The court believes that this question involves interpretation of North Dakota law of some magnitude, and should be resolved by the North Dakota Supreme Court. For this reason,

---

[11] Bourgois v. Montana-Dakota Utilities Co., 466 N.W.2d 813, 818 (N.D. 1991).

[12] The North Dakota Supreme Court has held that a duty to disclose exists when one party knows the other party to a contract is about to enter into a contract under a mistake of fact which rendered them insecure. Dewey v. Lutz, 462 N.W.2d 435, 441 (N.D. 1990). Here the question is similar but not identical: is there a duty to disclose when a party is aware that a statement it includes in a settlement agreement, while technically true, is misleading because separate agreements exist which are unknown and perhaps unknowable to the other party which renders the preserved right illusory.

the court finds there exists an unresolved issue in this case that is worthy of certifying to the North Dakota Supreme Court.

Under the catch-all provision of Rule 60(b)(6), the court exercises its equitable powers and **REVERSES, in part**, the magistrate judge's Report and Recommendation that found Smith failed to meet the requirements of Rule 60(b)(6). The court **ADOPTS** the other portions of the magistrate judge's Report and Recommendation.

For the reasons stated above, the court **HEREBY GRANTS** the plaintiff's motion under Rule 60(b)(6). The parties are directed to file a brief outlining any undisputed facts and any disputed facts and setting forth their legal arguments pertaining to the issue identified by the court that it is inclined to certify to the North Dakota Supreme Court within **21 days of the date of this order**.

**IT IS SO ORDERED.**

Dated this 3rd day of August, 2018.

    Sitting by designation:

    */s/ Ralph R. Erickson*
    Ralph R. Erickson, Circuit Judge
    Eighth Circuit Court of Appeals